1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                        EASTERN DISTRICT OF CALIFORNIA

10

11  In re                              District Court Case Nos.
                                       2:11-cv-00770-MCE;
12  DARRELL LYNN WHITMAN and           2:11-cv-00924- MCE
    ANN RACHEL WHITMAN
13                                     Bankruptcy Court Case No.
            Debtors.                   10-20120-C-7
14
                                       Adversary Proceeding No.
15  _____     10-2144-C

16  DARRELL LYNN WHITMAN,

17          Plaintiff,

18      v.                             MEMORANDUM AND ORDER

19  EDUCATIONAL CREDIT MANAGEMENT
    CORPORATION,
20
            Defendant.
21

22                             ----oo0oo----

23

24       Through the present action, Educational Credit Management

25  Corporation ("ECMC") appeals in case 2:11-cv-00770-MCE the order

26  of the United States Bankruptcy Court for the Eastern District of

27  California discharging the majority of Appellee Darrell Lynn

28  Whitman's ("Whitman") student loan debt.

1

Whitman cross-appeals, via a notice of appeal he filed in case
2:11-cv-00924-MCE, on several grounds, seeking either a full
discharge of his debt or, alternatively, remand to the bankruptcy
court for proper adjudication.  For the following reasons, the
bankruptcy court's decision is reversed.[1]

## BACKGROUND[2]

### A.    Factual Background Underlying the Adversary Proceeding.

Whitman is a sixty-six year old man who suffers from
diabetes and hypertension.  Whitman currently lives in Berkeley,
California, with his fifty-seven year old wife, who is
unemployed, and his eighteen-year old daughter, whom Whitman
claims as a dependent.

Whitman is highly educated having collected a variety of
graduate degrees, including a bachelor's degree in sociology from
Sonoma State University in 1973, a master's degree in social
science from Southern Oregon University in 1976, another master's
degree in government from California State University, Sacramento
("CSUS") in 2003, a law degree from the University of Santa Clara
in 1989 and a Ph.D. in politics from Keele University in London
in 2008.  Whitman has been a member of the California Bar since
1993.

---

[1]  This Court determined oral argument will not be of
material assistance and thus decides this case on the briefing.
See E.D. Cal. Local Rule 230(g).

[2] The following facts are derived from the record on appeal.

2

Whitman financed his education, at least in part, by acquiring federally-insured student loans.  On or about December 14, 2006, Whitman executed a Loan Consolidation Application and Promissory Note payable to Sallie Mae in the principal amount of $180,419.08 to consolidate the loans taken to attend Santa Clara University, CSUS and Keele University.  ECMC later acquired the loan from Sallie Mae and now holds all right, title and interest in Whitman's education-related debt.

Whitman's consolidated loan went into repayment upon disbursement on or about January 19, 2007, and interest accrues on that loan at a fixed rate of 7% per annum.  Whitman has not made any payments on the consolidated loan and has instead obtained deferments.  Accordingly, as of July 6, 2010, principal and interest on Whitman's consolidated note had reached a combined total of $218,589.61.

For obvious reasons, upon completion of his Ph.D. in 2008, Whitman thus began to look for employment, but despite applying for over 200 jobs, could not find work from June of 2008 through April of 2010.  Subsequently, from April of 2010 to June of 2010, Whitman worked part-time for the U.S. Census Bureau, making a total of $3,000.00.  By that time, Whitman had already filed a petition for relief under Chapter 7 of the Bankruptcy Code.

Eventually, however, in June of 2010, Whitman was offered a position as an investigator with the U.S. Department of Labor ("DOL").  Whitman's new employment was conditioned on his relocation from Davis, California, to the San Francisco Bay Area.

///

///

Whitman's daughter was also scheduled to move to the Bay Area in August of 2010 to attend the University of California at Berkeley. Accordingly, in July of 2010, Whitman and his wife opted to rent a home for $2,950.00 per month near affordable public transportation in Berkeley to minimize both Whitman's commuting costs and their daughter's living costs.

Whitman began work at the DOL on July 19, 2010, earning a gross salary of $81,460.00. Whitman's monthly net income was thus $4,637.00. His current monthly expenses, on the other hand, totaled $4,155.00, which was comprised of $2,950.00 for rent, $230.00 for electricity and gas, $75.00 for phone and internet, $600.00 for food and home maintenance, $150.00 for medical expenses and $150.00 for auto-related expenses. In addition, at the adversary proceeding, Whitman testified that the monthly expenses outlined in his declaration did not capture all of his current expenses. Whitman thus offered a new list of monthly expenses which included daily commuting costs (BART and transit fares), $200 a month in additional medical expenses, and two bills for unexpected dental expenses totaling $1,100.00 and $1,457.00, respectively.

Whitman avers he accumulated additional debt since he filed his bankruptcy petition. Specifically, he borrowed $6,000.00 from his daughter's personal college fund to cover his moving costs. He has also purportedly incurred various additional medical, dental and other miscellaneous expenses. Finally, Whitman contends he is now expected to contribute $5,000.00 per year to his daughter's college education. ER 30; Whitman Decl. ¶ 25.

Unfortunately, however, Whitman is nearing the end of his working life and believes that he can potentially work only five more years.  According to Whitman, his monthly income will then drop by fifty percent, and he has no substantial savings capable of supplementing that decrease.

**B.   The Adversary Proceeding.**

On March 12, 2010, Whitman filed the underlying adversary proceeding in this case against ECMC seeking discharge of his student loan obligation pursuant to 11 U.S.C. § 523(a)(8).  The bankruptcy court entered a Pretrial Scheduling Order on June 30, 2010, which set October 29, 2010, as the date upon which discovery closed and November 23, 2010, as the date for the pretrial conference.  Whitman timely submitted his pretrial statement, direct testimony and documentary evidence to the bankruptcy court.

The bankruptcy court held a trial in the adversary proceeding on February 16, 2011.  Whitman, who appeared pro se, was given the opportunity to present evidence and was questioned by ECMC's counsel, Mr. Barry Spitzer.  To determine if Whitman's student loan debt was dischargeable, the bankruptcy court applied the "undue hardship" test from the Second Circuit decision in In re Brunner, 831 F.2d 395, 396 (2d Cir. 1987), which the Ninth Circuit adopted in 1998 in United Student Aid Funds, Inc., (In re Pena), 155 F.3d 1108 (9th Cir. 1998).  To qualify for a student loan discharge, Brunner requires a debtor to prove:
///

(1)   that the debtor cannot maintain, based on current
      income and expenses, a "minimal" standard of
      living for himself and his dependents if forced to
      repay the loans;

(2)   that additional circumstances exist indicating
      that this state of affairs is likely to persist
      for a significant portion of the repayment period
      of the student loans; and,

(3)   that the debtor has made good faith efforts to
      repay the loans.

Brunner, 831 F.2d at 396; Pena, 155 F.3d at 1111.

In applying Brunner, the bankruptcy court found, as is pertinent here, that Whitman failed to meet the first prong of the test.  More specifically, the court stated:

Now, the three-prong test is basically that the debtor
cannot maintain a minimal standard - - and I stress the
word "minimal" standard of living if the debtor is
required to make payments on the loan.  Now, the courts
have not been clear.  I mean, basically the test comes
down to the facts and circumstances of each case what
is a minimal standard of living.

And, frankly, here, Mr. Whitman, you've got a pretty
good standard of living.  I've heard cases where people
are reduced to Social Security, a minimum amount of
income, like $8 - or $9,000 a year, and even in those
instances, I held that not all of the student loan
would be discharged.

You have spent an incredible amount of time in school
and little time in active working, which I don't
understand.  I mean, wow.  If you'd started working 20
years earlier, you wouldn't be in this situation.  But,
you know, you make a decision, I guess, and sometimes
you're not aware of what the consequences of the
decision are.

Trial Transcript, 48:5-48:22.

Shortly thereafter, the court stated:

So, however, you know, the other side of the coin is
that you are much older.  You're over 65.  You don't
have much more time left in your working career, so
it's going to be short.

6

But I don't think under the circumstances you're living a minimal - - in a minimal survival mode, which is kind of what I think the standard is, minimal standard of living.  I think you can afford to pay some money.

I think what Mr. Spitzer has proposed is not out of line, and that's the Exhibit E letter, which it comes to $680 a month apparently.  And as Mr. Spitzer has adequately pointed out, you have an outrageous amount of rental income.  I mean, that in itself can be reduced by at least $1,000 a month it seems to me and still maintain a reasonable standard of living.

Your wife, although she might be 57 years of age, and you say that there is a lot of age discrimination in California, and there may very well be in certain jobs, but other employers are very happy to have older employees.  Why? Because they have standards of showing up on time, of being courteous to people, you know, being dependable, reliable, doing a good job.  There is a lot of potential for an older person to get employment.  Admittedly, this is not the best time in our economy to be out there looking for a job, but it's possible.

I do note that you've made efforts to become employed, to maximize your income, that you have made payments on your loan.  Not on the last loan [the consolidated loan], but on previous loans that were a portion of this total obligation.

**So I do find that you've met the prongs here except the minimal standard of living.**

...

[T]he overall situation, when I consider the fact that you do have an above standard of living, in other words, it's more than a minimal standard of living, it's a fairly good standard.  You may not think so, but compared to what's happening in the economy and people that are in a position of paying off their student loans, you're in a relatively good position, frankly.

Id., 49:22-51:18 (emphasis added).

Despite the bankruptcy court's conclusion that Whitman failed to meet the minimal standard of living prong, that court nonetheless went on to partially discharge Whitman's student loan debt to the extent that it exceeded $40,000.  More specifically, the bankruptcy court reasoned:

7

As I said, my main problem with you is that you're too old. You can't keep working forever. So here's my conclusion.

My conclusion is that you can pay at least $650 a month for five years. That works out to $39,000. So I'm going to reduce the total amount of your obligation to $40,000. And if you pay $650 a month for five years, it will be paid off. But that's - - that's my ruling in this regard.

I think there is a chance you can continue working, your wife will get a job. Maybe your daughter can be used to obtain a better lease for you so that your rental income comes to a reasonable amount. I think $1500 a month is a pretty reasonable amount for a two-bedroom apartment in Berkeley. For that matter, most parts of California. So that's my ruling. I'm going to reduce your obligation to $40,000, and you will have to deal with that Mr. Whitman.

Id., 51:19-52:11.

On March 9, 2011, the bankruptcy court entered a final written judgment partially discharging Whitman's student loan debt. That judgment specifically provides that "$40,000.00 of the debt owed by plaintiff Darrell L. Whitman to defendant ECMC is nondischargeable in bankruptcy pursuant to 11 U.S.C. § 523(a)(8)(A)(I) with interest to accrue at the contract rate as of judgment until paid." Judgment, 2:1-4.

**C.  The Parties' Cross-Appeals.**

On March 17, 2011, ECMC filed a Notice of Appeal with the United States Bankruptcy Court for the Eastern District of California. ECMC also filed a statement of election to have the appeal heard by the district court pursuant to 28 U.S.C. 158(c)(1) and Federal Bankruptcy Rule 8003.

///

That same day, Whitman also noticed his own appeal.  On March 22,
2011, both appeals were transferred to this Court.

On May 5, 2011, ECMC filed its Opening Brief, arguing that
the bankruptcy court erred in finding Whitman was entitled to a
partial discharge when he failed to prove all three prongs of the
undue hardship test were met.  Whitman subsequently filed his
Answering Brief,[3] raising five of his own issues on appeal
pursuant to Federal Rule of Bankruptcy Procedure 8009(a)(2).[4]
According to Whitman, the bankruptcy court: (1) erred a matter of
law in granting Whitman only a partial discharge based on
property not within the jurisdiction of the bankruptcy estate;
(2) erred as a mixed question of fact and law in failing to
address the totality of Whitman's circumstances and thus failing
to fully discharge his debt; (3) abused its discretion in denying
Whitman procedural due process during trial by depriving Whitman
the opportunity to test evidence and contest arguments made by
ECMC; (4) abused its discretion by employing age discrimination
as part of its legal reasoning; and (5) erred in signing a final
order that materially differed from its order at trial.

///

---

[3] Also currently pending before the Court is Whitman's
Motion for an Extension of Time in Which to file his Answering
Brief (ECF No. 10).  Good cause having been shown, that request
is GRANTED.

[4] Whitman's arguments in his Answering Brief can be
construed in part as responsive to ECMC's appeal and in part as
new to his own cross-appeal.  Given the fact that Whitman filed
his own appeal, albeit in a separate docket, and despite the fact
he failed to identify which arguments are responsive to ECMC's
appeal and which are pertinent to the cross-appeal, the Court
finds that his papers conform with the spirit if not the letter
of Federal Rule of Bankruptcy Procedure Rule 8009(a)(2).  The
Court will thus consider each of his arguments here.

For the following reasons, the decision of the bankruptcy court is reversed.

## STANDARD

An appellant may petition the district court for review of a bankruptcy court's decision.  Fed. R. Bankr. P. 8013.  The bankruptcy court's legal conclusions are renewed on a de novo basis, and its factual determinations are assessed pursuant to a "clearly erroneous" standard.  Murray v. Bammer (In re Bammer), 131 F.3d 788, 792 (9th Cir. 1997) (en banc).  Findings of fact are "clearly erroneous" only if the reviewing court is "left with the definite and firm conviction that a mistake has been committed."  In re Marquam Inv. Corp., 942 F.2d 1462, 1466 ( Cir. 1991) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)).  Appellant has the burden of proving such error has been committed, and the reviewing court should not reverse simply because another decision could have been reached.  See In re Windsor Indus., Inc., 459 F. Supp. 270, 275 (N.D. Tex. 1978).

///
///
///
///
///
///
///
///

**ANALYSIS**

**A.   ECMC's Appeal.**

ECMC takes the position, among others, that the bankruptcy court correctly determined Whitman could maintain a better than "minimal" standard of living while repaying his student loans and thus incorrectly found the requisite undue hardship that is a precursor to even a partial discharge of student loans under 11 U.S.C. § 523(a)(8).  Because this Court finds reversal is warranted on this ground, it need not address the remainder of ECMC's arguments.

**1.   Dischargeability of Student Loan Debt.**

Student loan debt obligations are presumptively nondischargeable in bankruptcy absent a showing of "undue hardship" derived through an adversary proceeding.  <u>See</u> 11 U.S.C. § 523(a)(8).  Specifically, § 523(a)(8) provides:

> A discharge under section 727...does not discharge an individual debtor from any debt...unless excepting such debt from discharge under this paragraph will impose an <u>undue hardship</u> on the debtor and the debtor's dependents, for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend.

///

///

///

11 U.S.C. § 523(a)(8) (emphasis added).  Although "undue hardship" is not defined in the Bankruptcy Code, courts have recognized that "[t]he existence of the adjective 'undue' indicates that Congress viewed garden-variety hardship as insufficient excuse for a discharge of student loans...."  Pena, 155 F.3d at 1108, 1111 (9th Cir. 1998) (quoting Brunner, 831 F.2d at 396) (internal quotations omitted).

As already mentioned above, to determine whether excepting student loans from discharge creates an "undue hardship," the Ninth Circuit applies the three-part test first enunciated in Brunner.  See id., 155 F.3d at 1111-12.  Again, under Brunner the debtor must prove that: (1) he cannot maintain, based on current income and expenses, a "minimal" standard of living for himself and his dependents if forced to repay the loans; (2) additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) the debtor has made good faith efforts to repay the loans.  831 F.2d at 396.

Under § 523(a)(8), a bankruptcy court may partially discharge student loan debt.  Saxman v. Educ. Credit Mgmt. Corp. (In re Saxman), 325 F.3d 1168, 1173-74 (9th Cir. 2003).  To obtain a partial discharge, however, a debtor must still demonstrate that he meets the "undue hardship" requirement of § 523(a)(8) as to that portion of the debt to be discharged.  Id. at 1174.

///

///

///

12

1   If the debtor can establish all three prongs, the court may

2   exercise its equitable authority under Section 105(a) of the

3   Bankruptcy Code to partially discharge that portion of the

4   student loan that the debtor could not repay without imposing an

5   undue hardship.  Id. at 1174-75.

6        "[T]he burden of proof is on the debtor, and the debtor

7   must prove all three elements before discharge can be granted."

8   Rifino v. United States (In re Rifino), 245 F.3d 1083, 1087-88

9   (9th Cir. 2001); see also United Student Aids Funds, Inc. v.

10  Nascimento (In re Nascimento), 241 B.R. 440, 445 (9th Cir. B.A.P.

11  1999) (citing Pa. Higher Educ. Assistance Agency v. Faish (In re

12  Faish), 72 F.3d 298, 306 (3d Cir. 1995)).  If the debtor fails to

13  satisfy any of one of these requirements, "the bankruptcy court's

14  inquiry must end there, with a finding of no dischargeability."

15  Rifino, 245 F.3d at 1088 (citing Faish, 72 F.3d at 306).

16

17           **2.   Whether the Bankruptcy Court Erred in Finding**
             **Whitman Maintained More than a Minimal Standard of**
18           **Living.[5]**

19       The bankruptcy court did not clearly err in finding Whitman

20  failed to prove he "cannot maintain, based on current income and

21  expenses, a 'minimal' standard of living for herself and her

22  dependents if forced to repay the loans."  Brunner, 831 F.2d at

23  396.  To meet this requirement, the debtor must demonstrate more

24  than simply "tight finances."  Rifino, 245 F.3d at 1088.

25  _____

26       [5] In his Answering Brief, Whitman challenges the bankruptcy
    court's finding on this point by way of a number of his own
27  arguments.  For clarity of the Court's analysis, however, the
    Court addresses the propriety of the bankruptcy court's decision
28  in this section and separately addresses Whitman's arguments in
    the context of his cross-appeal below.

1  "In defining undue hardship, courts require more than temporary

2  financial adversity, but typically stop short of utter

3  hopelessness." Id. (internal quotation and citations omitted).

4  Rather, determining what constitutes a minimal standard of living

5  for each individual debtor requires a case-by-case assessment;

6  "the test is whether it would be 'unconscionable to require the

7  debtor to take steps to earn more income or reduce [his]

8  expenses' in order to make payments under a given repayment

9  schedule." Carnduff v. U.S. Dep't of Educ. (In re Carnduff),

10 367 B.R. 120, 127 (9th Cir. B.A.P. 2007) (quoting In re Biranne,

11 287 B.R. 490, 495 (9th Cir. 2002); Nasciemento, 241 B.R. at 445).

12      Pursuant to that test, the bankruptcy court explicitly found

13 that the Debtor met all prongs of the undue hardship test

14 "except the minimal standard of living." Trial Transcript,

15 50:25-51:1 (emphasis added). That court observed that Whitman's

16 standard of living was "more than a minimal standard of living,"

17 and in fact was "a fairly good standard." Id., 51:12-15.

18 According to that court, "compared to what's happening in the

19 economy and people that are in a position to pay off their loans,

20 [Whitman's] in a relatively good position, frankly." Id.,

21 51:15-18.

22      The court's conclusion is supported by the record. As of

23 July 19, 2010, Whitman's net monthly income was $4,637.00, which

24 exceeded his net monthly expenses estimated at trial to be in the

25 ballpark of $4,155.00. Whitman was paying an inordinate amount

26 of monthly rent, however, namely $2950.00, and the bankruptcy

27 court found this payment could likely be reduced to $1500.00 a

28 month. Id., 51:3-8.

1    Moreover, the bankruptcy court also correctly pointed out that,

2    Whitman's averments of age-discrimination aside, nothing was

3    preventing Whitman's wife from obtaining gainful employment.  Id.

4    This Court thus finds no unconscionability in requiring Whitman

5    to take steps to both minimize monthly expenses and maximize

6    monthly income.  Accordingly, the bankruptcy court did not

7    clearly err in finding that Whitman failed to satisfy the

8    "minimal" standard of living requirement necessary to prove the

9    requisite "undue hardship" that will befall him absent discharge

10   of his student loan debt.

11

12                **3.   Whether the Bankruptcy Court Erred in Partially
                  Discharging Whitman's Student Loan Debt Despite
13                its Finding Whitman's Standard of Living Was Not
                  Minimal.**

14

15   Because Whitman failed to meet the first prong of the

16   Brunner test, the bankruptcy court's inquiry should have ended

17   there.  That court nonetheless went on to determine that the

18   Debtor met the final two Brunner prongs and was thus entitled to

19   a partial discharge of the great majority of his debt.  That

20   finding is contrary to the law.

21       The Ninth Circuit first addressed partial dischargeability

22   in In re Saxman, 325 F.3d 1168.  The appellate court determined

23   that the granting of a partial discharge was within the

24   bankruptcy court's equitable powers under Section 105 of the

25   Bankruptcy Code.  That court also made clear, however, that an

26   undue hardship finding under section 523(a)(8) remains a

27   condition precedent to a partial discharge.

28   ///

                                    15

1    Id. at 1174; see also Rifino, 245 F.3d at 1087 (debtor who wishes

2    to obtain a discharge of his student loans must therefore meet

3    the requirements of § 523(a)(8) as to the portion of the debt to

4    be discharged before that portion of his debt can be discharged).

5        The court in Saxman further noted that while Bankruptcy Code

6    section 105(a) grants bankruptcy courts the equitable power to

7    issue any order "that is necessary or appropriate to carry out

8    the provisions" of the Bankruptcy Code, "a court may exercise its

9    equitable power only as a means to fulfill some specific Code

10   provision." Saxman, 325 F.3d at 1174 (internal citations

11   omitted)(emphasis added). "Unless the court first insures itself

12   that the debtor has met the requirements under § 523(a)(8), the

13   court's discretionary use of its equitable authority amounts to

14   an impermissible 'roving commission to do equity.'" Id. at 1175

15   (citing United States v. Sutton, 786 F.2d 1305, 1308 (5th Cir.

16   1986)). Indeed, "[t]o allow the bankruptcy court, through

17   principles of equity, to grant any more or less than what the

18   clear language of § 523(a)(8) mandates would be tantamount to

19   judicial legislation and is something that should be left to

20   Congress, not the courts." In re Cox, 338 F.3d 1238, 1243 (11th

21   Cir. 2003.)

22       In short, a partial discharge is not appropriate unless the

23   court finds that all three parts of the Brunner undue hardship

24   test is met. Saxman at 1174-75. If, as here, the debtor fails

25   to satisfy any one of the requirements for proving undue

26   hardship, "the bankruptcy court's inquiry must end there, with a

27   finding of no dischargeability." Rifino, 245 F.3d at 1089

28   (internal citations omitted).

Because the bankruptcy court found that Whitman was living beyond a minimal standard, it lacked the power to grant a partial discharge, and erred in granting Whitman such relief.  The bankruptcy court's granting of partial discharge was thus erroneous.  Accordingly, that decision is reversed, and this Court hereby reinstates Whitman's entire student loan obligation.

### B.  Whitman's Cross-Appeal.

Whitman raises a variety of issues on appeal, none of which is sufficient to persuade the Court its above conclusion is incorrect.  Whitman first argues that the bankruptcy court erroneously considered assets that were not within the jurisdiction of the bankruptcy estate, namely his current income, in determining whether he had shown the requisite undue hardship. Whitman then goes on to argue that the bankruptcy court failed to consider the totality of his circumstances when applying the Brunner test, denied Whitman due process of law at trial, and abused its discretion by employing age discrimination as part of its legal reasoning.  Each of these contentions is rejected.[6]

/// 
/// 
/// 
/// 

---

[6] Whitman also contends that the judgment issued by the bankruptcy court at the adversary proceeding materially differed from the judgment prepared by ECMC's counsel and signed by the court.  Appellee's Br. at 21.  Given this Court's reversal of the bankruptcy court's decision, this argument is moot.

1.  **The bankruptcy court did not err when it utilized Whitman's current income to analyze undue hardship.**

According to Whitman, the bankruptcy court erred as a matter of law by considering "property" not within the bankruptcy estate in determining Whitman's monthly income under the <u>Brunner</u> undue hardship analysis.  Specifically, Whitman contends that the bankruptcy court should have used the income he was earning at the time of filing his Chapter 7 petition, which was $1,412.00 per month, as his monthly income for the purpose of determining whether Whitman met the "undue hardship" burden to fully discharge his student loan debt.  Whitman points to 11 U.S.C. §§ 101(10A), which defines "current monthly income," and 541 (a), which defines property of the bankruptcy estate, in support of this contention.  Whitman's position, for which he notably provides no authority, is untenable.

The first prong of the <u>Brunner</u> test requires a debtor to prove that he cannot maintain, based on <u>current</u> income and expenses, a "minimal" standard of living for himself and his dependents if forced to repay the loans.  831 F.3d at 396. "Current income and expenses" does not refer to the Bankruptcy Code's definition of "current monthly income" in 11 U.S.C. § 101(10A) or to the property of estate provisions in 11 U.S.C. § 541(a).  Instead, in determining whether a debtor would face undue hardship if required to pay his student loan obligations, the bankruptcy court looks to a debtor's <u>current</u> income and <u>current</u> expenses at the time of the requested discharge to develop an accurate picture of the debtor's financial health and ability to pay.

The method for calculating a debtor's average monthly income and expenses is a matter properly left to the discretion of the bankruptcy court.  <u>Pena</u>, 155 F.3d at 1112.  At the time he filed bankruptcy, Whitman contends his monthly income was $1,412.00 and his monthly expenses were $2,407.00.  However, on or around July 19, 2010, Whitman began his job with the DOL and his monthly income increased to $4,637.00 a month.  By the time of the adversary proceeding on February 16, 2011, Whitman was still receiving $4,637.00 a month.  Whitman listed this new salary with the DOL in both his pretrial statement and the declaration he filed pursuant to United States Bankruptcy Court for the Eastern District of California Local Rule 9017-1(a).  At the adversary proceeding, Whitman offered no new evidence or testimony indicating that his monthly income had since decreased. Furthermore, nothing in the record or in the parties' recent briefs demonstrates that Whitman's monthly income has decreased or is fluctuating in any way.  The bankruptcy court was thus correct as a matter of law in using Whitman's income at the time of the adversary proceeding as his "current income" for purposes of determining whether Whitman satisfied the <u>Brunner</u> "undue hardship" test.

**2.   The Bankruptcy Court Properly Considered the Totality of Whitman's Circumstances When it Evaluated Each Prong of the <u>Brunner</u> Test.**

Whitman next contends that the bankruptcy court misread applicable precedent governing the <u>Brunner</u> test in this circuit and that, rather than relying on the "present state of the law," the court relied solely on the 1987 <u>Brunner</u> decision itself.

19

More specifically, Whitman argues that the court failed to consider the totality of the relevant circumstances and rendered its decision without considering that Whitman: 1) is nearing retirement; 2) needs to voluntarily contribute to his retirement fund; 3) has substantial post-bankruptcy debt obligations; 4) is obligated to support his dependent daughter; and 5) has chronic health problems.  Whitman posits that the bankruptcy court instead based its decision on speculation about Whitman's wife's potential for re-employment, speculation concerning how Whitman could reduce his monthly rent expense, and erroneous findings regarding Whitman's education and work history.  Whitman's argument is belied by the record.

Contrary to Whitman's characterization of the bankruptcy court's decision, that court did consider Whitman's unique circumstances and even found in favor of Whitman on the second and third <u>Brunner</u> prongs.  Indeed, the very factors Whitman argues the bankruptcy court failed to consider were in fact taken into account by that court in reaching its conclusion as to these latter factors.  The bankruptcy court specifically considered Whitman's advanced age and chronic health problems, as well as the potential for his expenses to continue to rise, in finding Whitman met the "additional circumstances" prong.  Moreover, Whitman has failed to show that, even if the bankruptcy court did not consider his desire to contribute to his daughter's college education, such a failure is contrary to the law.

///

///

///

See <u>Nascimento</u>, 241 B.R. at 446 (fact that "[the debtor's] son want[ed] to go to college and that [the debtor] would like to help him pay for it...[did] not create an 'undue hardship' to prevent [the debtor] from her own student loans.).  Finally, as previously noted, the bankruptcy court properly considered the potential employment of Whitman's wife and reduction in Whitman's monthly rent payment as part of the "minimal" standard of living analysis.  Whitman's current argument is thus rejected.

### 3.    The Bankruptcy Court Did Not Deny Whitman Due Process of Law.

Whitman next makes vague and overbroad assertions that the bankruptcy court "abused its discretion" by permitting his due process rights to be violated at trial.  He goes on to clarify more specifically that he believes the bankruptcy court: (1) disregarded his trial brief and exhibits; (2) rejected his offer to make an opening statement; (3) truncated his presentation of evidence in favor of ECMC's cross-examination of Whitman; and (4) rendered judgment without providing him the opportunity to test ECMC's evidence or to make a closing statement.  Each of Whitman's contentions is rejected below.

The Due Process Clause requires notice and an opportunity for a hearing, appropriate to the nature of the case, before a person is deprived of life, liberty or property.  <u>Mullane v. Central Hanover Bank & Trust Co.</u>, 339 U.S. 306, 313 (1950).

///

///

///

Notice is required because "the right to be heard has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear of default, acquiesce or contest." Id. at 314.  The due process requirement of a hearing, does not, however, mean that in every civil case there must be hearing on the merits.  Boddie v. Connecticut, 401 U.S. 371, 378 (1971).  It is well recognized that the opportunity to be heard is one which must be granted "at a meaningful time and in a meaningful manner."  Armstrong v. Manzo, 380 U.S. 545, 552 (1965).

In this case, Whitman's contentions are specifically directed at the nature of the adversary proceeding and to his claim that he was prevented from presenting evidence at trial. Pursuant to Local Rule 9017-1, however, Whitman presented direct testimony and documentary evidence to the bankruptcy court in advance of trial.  Whitman was then given the additional opportunity at the end of the proceedings to present the Court with new documentary evidence.  ER 4:22-6:4; 40:7-45:6.[7]  It is thus clear from the record that Whitman received notice of the trial, participated in the pretrial order, filed a pretrial statement and submitted direct testimony and documentary evidence.

---

[7] These documents, most of which were not provided to this Court on appeal, purportedly included updated monthly expenses reflecting daily community costs in the Bay Area, recent medical bills, two dental bills, evidence of his medical condition, his tax returns, a statement from Whitman's daughter about her dependent status, copies of all job applications he submitted over the past three years, a statement from Sallie Mae, and a copy of an income based repayment application for Sallie Mae which Whitman never submitted.

During the trial, Whitman was given the chance to make a short opening statement to the court and then called himself as his only witness.  Whitman's pretrial declaration served as his direct testimony, and Whitman was then questioned by the Court and ECMC's counsel.  Finally, while Whitman did not give a closing argument, nothing in the record indicates he requested to do so at trial, or that his failure to make any argument in such a straight-forward bench trial caused him any harm.  The record thus reflects that Whitman was given ample opportunity to be heard and to present evidence relevant to his claims.  His due process attack on the bankruptcy court proceeding thus fails.

### 4.    The Bankruptcy Court Did Not Employ Age Discrimination as Part of its Legal Reasoning.

Whitman argues that the court abused its discretion by improperly considering his age in determining his eligibility for a full discharge.  This argument is based primarily on the bankruptcy court's observation to Whitman at trial that, "[i]f you'd started working 20 years ago, you wouldn't be in this situation."  Trial Transcript, 48:19-20 .  Whitman characterizes this comment as taking improper consideration of his age, and he argues that the statement amounts to an "animus toward older people who seek to make a contribution to themselves, their families, and their society through higher education."  Answering Brief, p. 20-21.  Whitman further contends that ECMC's opposing counsel insinuated that debtors who take large amounts of student loan debt out late in life lack good faith.  <u>Id.</u> at 20.
///

1    First and foremost, this Court has already determined it

2    need not reach the question of Whitman's good faith.

3    Accordingly, any statement by either opposing counsel or the

4    bankruptcy court going to Whitman's purported bad faith in taking

5    out student loans only after reaching an arguably advanced

6    working age is irrelevant.

7    Moreover, age is one of many appropriate considerations

8    relevant to determining whether a debtor has met the second prong

9    of the Brunner undue hardship test (i.e., whether additional

10   circumstances exist indicating the current state of affairs is

11   likely to persist through a significant portion of the repayment

12   period). See, e.g., Educ. Credit Mgmt. Corp. v. Nys, 308 B.R.

13   436, 444-45 (9th Cir. B.A.P. 2004) (finding that the additional

14   circumstances determination is made on a case-by-case basis, and

15   may include consideration of, inter alia, the debtor's age,

16   training, education, and assets). Here, while it is clear that

17   the bankruptcy court considered Whitman's age in its analysis,

18   this factor worked to Whitman's advantage, not to his

19   disadvantage. For example, that court found that Whitman met the

20   second prong of the Brunner test and that he had demonstrated

21   "additional circumstances" outside of Whitman's control, namely

22   that Whitman is over sixty-five, with not much time left to work.

23   ER 49:17-25, 50:25-51:21.

24   Finally, the bankruptcy court's comment regarding Whitman's

25   current financial predicament indicates not an animus against the

26   aged, but a common-sense observation that Whitman had chosen to

27   spend a significant portion of his adult life attending graduate

28   school rather than as a wage-earning member of the work force.

24

1  Whitman may take offense at the bankruptcy court's suggestion

2  that had he dedicated himself more fully to employment many years

3  ago, and perhaps foregone some educational opportunities, he

4  might not be confronted with his current financial situation, but

5  Whitman has nonetheless failed to point this court to any legal

6  error on the part of the bankruptcy court.

7

8                            **CONCLUSION**

9

10     Accordingly, for all of the reasons just stated, Whitman's

11  Motion for 21-Day Extension of Time (ECF No. 10) in

12  2:11-cv-00770-MCE is GRANTED, the bankruptcy court's decision

13  partially discharging the Debtor's student loans is REVERSED, and

14  Whitman's debt is reinstated in its entirety.  The Clerk of the

15  Court is directed to close both district court cases,

16  2:11-cv-00770-MCE and 2:11-cv-00924-MCE.

17     IT IS SO ORDERED.

18
    Dated: March 29, 2012
19

20  _____

21  MORRISON C. ENGLAND, JR.
    UNITED STATES DISTRICT JUDGE
22

23

24

25

26

27

28